UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
DIGNA T.,

                          Plaintiff,         <u>DECISION AND ORDER</u>
                                                1:21-CV-09467-GRJ

        v.

COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In March of 2016, Plaintiff Digna T.[1] applied for Disability Insurance Benefits and Supplemental Security Income Benefits under the Social Security Act. The Commissioner of Social Security denied the applications. Plaintiff, represented by Christopher James Bowes, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 26).

This case was referred to the undersigned on June 14, 2023. Presently pending are the parties' Motions for Judgment on the Pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket Nos. 20,

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

29). For the following reasons, Plaintiff's motion is due to be granted, the Commissioner's motion is due to be denied, and this case is remanded for further administrative proceedings.

## I. BACKGROUND

### A. Administrative Proceedings

Plaintiff applied for benefits on March 11, 2016, alleging disability beginning November 2, 2015. (T at 256-59, 260-68).[2]  Plaintiff's applications were denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on March 22, 2018, before ALJ Lori Romeo. (T at 66-96). Plaintiff appeared with an attorney and testified with the assistance of an interpreter. (T at 75-84). The ALJ also received testimony from Dr. Arnold Ostrow, a medical expert (T at 85-88), and Joseph Thompson, a vocational expert. (T at 88-93).

ALJ Romeo held a supplemental hearing on August 1, 2018. (T at 33-65).  Plaintiff appeared with an attorney and testified with the assistance of an interpreter. (T at 37-40, 48-51). The ALJ received testimony from two medical experts, Dr. Robert Thompson (T at 40-48) and Dr. Richard

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 14.

Buitrago (T at 51-54), along with testimony from Frank Linder, a vocational expert. (T at 56-61).

On September 4, 2018, the ALJ issued a decision denying the applications for benefits. (T at 15-32).  On April 19, 2019, the Appeals Council denied Plaintiff's request for review. (T at 1-8).

Plaintiff commenced an action in the United States District Court for the Southern District of New York, seeking judicial review of the ALJ's decision.  On October 8, 2020, the Honorable Vernon S. Broderick, United States District Judge, approved a stipulation remanding this matter for further administrative proceedings. (T at 729).  On remand, the Appeals Council vacated the ALJ's decision and remanded the matter for further development of the record and reconsideration. (T at 741-47).

A further administrative hearing was held on April 15, 2021, before ALJ Romeo. (T at 690-728).  Plaintiff appeared with an attorney and testified with the assistance of an interpreter. (T at 701-710).  The ALJ also received testimony from Patricia Highcove, a vocational expert. (T at 712-720).

### B.    ALJ's Decision

On July 27, 2021, the ALJ issued a second decision denying the applications for benefits. (T at 660-83).  The ALJ found that Plaintiff had not

3

engaged in substantial gainful activity since November 2, 2015 (the alleged onset date) and met the insured status requirements of the Social Security Act through December 31, 2020 (the date last insured). (T at 669).

The ALJ concluded that Plaintiff's varicose veins, cervical and lumbar spinal impairment, hip impairment, knee impairment, status post-bariatric surgery with subsequent weight gain resulting in obesity, bipolar disorder, depressive disorder, anxiety disorder, and headaches were severe impairments as defined under the Act. (T at 670).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 670).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitations: she can sit for six hours in an eight-hour workday; stand/walk in combination for six hours in an eight-hour workday; occasionally use foot controls; occasionally climb stairs and stoop; but cannot crouch or walk on narrow, slippery, or moving surfaces; cannot work at unprotected heights, with machinery with moving mechanical parts, or vibration; and she can have no more than occasional exposure to extremes of cold. (T at 673-74).

The ALJ also found Plaintiff limited to simple tasks; work that requires little or no judgment to perform simple tasks that can be learned in a short period of time (30 days or less), and work that is typically given a specific vocational preparational rating of one or two in the *Selected Characteristics of Occupations*. (T at 673-74).

The ALJ concluded that Plaintiff could not perform her past relevant work as a home health aide. (T at 681).

However, considering Plaintiff's age (45 on the alleged onset date), education (limited), work experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 681).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between November 2, 2015 (the alleged onset date) and July 27, 2021 (the date of the ALJ's second decision). (T at 682).

ALJ Romeo's second decision is considered the Commissioner's final decision.

### C.   *Procedural History*

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on November 16, 2021. (Docket No. 1)  On August 16, 2022,

Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket Nos. 20, 21).  The Commissioner interposed a cross-motion for judgment on the pleadings, supported by a memorandum of law, on October 17, 2022. (Docket Nos. 29, 30).  On November 4, 2022, Plaintiff submitted a reply memorandum of law in further support of her motion. (Docket No. 31).  The Commissioner filed a reply memorandum of law on November 10, 2022. (Docket No. 32).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Lamay v. Commissioner of Soc. Sec.*,

562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a

five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is
> currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has
> a "severe impairment" which limits his or her mental or physical
> ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner
> must ask whether, based solely on medical evidence, claimant
> has an impairment listed in Appendix 1 of the regulations. If the
> claimant has one of these enumerated impairments, the
> Commissioner will automatically consider him disabled, without
> considering vocational factors such as age, education, and
> work experience.
>
> 4. If the impairment is not "listed" in the regulations, the
> Commissioner then asks whether, despite the claimant's severe
> impairment, he or she has residual functional capacity to
> perform his or her past work.
>
> 5. If the claimant is unable to perform his or her past work, the
> Commissioner then determines whether there is other work
> which the claimant could perform.

See Rolon v. Commissioner of Soc. Sec., 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); see also 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the

burden shifts to the Commissioner at step five. See Green-Younger v.

Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises one main argument in support of her request for reversal of the ALJ's decision.  Plaintiff argues that the ALJ's assessment of the medical opinion evidence was flawed.

### A.    *Medical Opinion Evidence*

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).[3]

A "treating physician" is the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant] ... with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.

---

[3] In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence.  The revised regulations apply to claims filed on or after March 27, 2017.  See 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits before that date, the new regulations do not apply here.

Treating physician opinions are considered particularly probative because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical evidence alone or from reports of individual examinations." 20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2).

An opinion from a treating physician is afforded controlling weight as to the nature and severity of an impairment, provided the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2).

However, treating physician opinions are not always dispositive.  For example, an opinion will not be afforded controlling weight if it is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

To determine how much weight a treating physician's opinion should be given, the ALJ considers the "*Burgess* factors" identified by the Second Circuit: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of

the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95–96 (2d Cir. 2019)(following *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

The *Burgess* factors are also applied to the opinions of non-treating physicians, "with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant." *McGinley v. Berryhill*, No. 17 Civ. 2182, 2018 WL 4212037, at *12 (S.D.N.Y. July 30, 2018).  A consultative physician's opinion may constitute substantial evidence. *See Petrie v. Astrue*, 412 F. Appx 401, 406 (2d Cir. 2011).

In the present case, the record contains several medical opinions. This Court will summarize each opinion and then discuss the ALJ's analysis.

### 1.   Dr. Balmaceda

In or about March of 2018, Dr. Casilda Balmaceda, a treating physician, completed a lumbar spine RFC questionnaire.  She opined that Plaintiff could sit, stand, or walk for less than 2 hours in an 8-hour workday, never lift any weight, rarely climb stairs, and would likely miss more than 4 days of work per month due to her impairments or treatment. (T at 611-13). Dr. Balmaceda reported that Plaintiff's experience of pain and other

symptoms would constantly interfere with her attention and concentration. (T at 611).

Dr. Balmaceda also completed a cervical spine RFC questionnaire, apparently at or about the same time, in which she assessed the same limitations. (T at 615-19).

At or about the same time, Dr. Balmaceda appears to have completed another form, which is difficult to decipher due to poor handwriting, but in which the physician seems to decline to provide an assessment of Plaintiff's limitations. (T at 609).

2.    *Dr. Ravi*

Dr. Ram Ravi performed a consultative examination in April of 2016. Dr. Ravi characterized Plaintiff's prognosis as "[g]uarded." (T at 379).  He assessed no limitation in Plaintiff's ability to sit or stand and moderate limitation with respect to bending, pushing, pulling, lifting, and carrying. (T at 379).

Dr. Ravi opined that Plaintiff should not engage in squatting and should avoid activities involving mild or greater exertion. (T at 379).  He also explained that Plaintiff may experience schedule interruptions due to a history of migraine headaches. (T at 379-80).

### 3. Dr. Aguiar

Dr. Silvia Aquiar performed a consultative examination in December of 2017.  She characterized Plaintiff's prognosis as "[g]uarded." (T at 385).  Dr. Aquiar assessed "moderate" limitation with respect to Plaintiff's ability to bend, carry, and engage in heavy lifting. (T at 385).  She opined that Plaintiff had "moderate" limitation in prolonged standing, walking, kneeling, and crouching. (T at 385).

In a medical source statement that accompanied her consultative examination report, Dr. Aquiar indicated that Plaintiff could frequently lift/carry up to 20 pounds, sit for 3 hours in an 8-hour workday, and stand/walk for 1 hour in an 8-hour workday. (T at 387-88).

### 4. Dr. Thompson

Dr. Robert Thompson testified as a medical expert at the administrative hearing held in August of 2018.

Dr. Thompson reviewed the record and opined that Plaintiff could frequently lift 10 pounds and occasionally lift 20 pounds. (T at 45).  He testified that Plaintiff could sit for 2 hours at a time and for a total of 6 hours in an 8-hour workday. (T at 45).

Regarding standing and walking, Dr. Thompson explained that, from an orthopedic standpoint, he believed Plaintiff could stand/walk for 6 hours

in an 8-hour workday, but when considering Plaintiff's anemia and "cardiac factors" – which Dr. Thompson described as "technically outside of my field" – he opined that Plaintiff was likely limited to standing/walking for 4 hours in an 8-hour workday. (T at 45-46).

### 5.   *ALJ's Analysis*

Plaintiff challenges the ALJ's assessment of the medical opinion evidence concerning her ability to perform walking and standing consistent with the demands of light work, *i.e.,* standing/walking for up to 6 hours a day. *See Mancuso v. Astrue*, 361 F. App'x 176, 178 (2d Cir. 2010); 20 CFR § 404.1567 (b).

The ALJ found that Plaintiff could stand and/or walk in combination for 6 hours in an 8-hour workday. (T at 673).  This conclusion is contradicted by the assessments of three physicians – Dr. Balmaceda (a treating physician), Dr. Aquiar (a consultative examiner), and Dr. Thompson (a non-examining medical expert).

The ALJ discounted Dr. Aquiar's assessment as "based mostly on [Plaintiff's] self-reports" and not supported by objective evidence. (T at 679). The ALJ found Dr. Balmaceda's opinion not consistent with the "clinical records." (T at 679).  The ALJ considered Dr. Thompson's

testimony regarding Plaintiff's standing/walking limitations "speculative" and outside his field of expertise. (T at 680).

The Court concludes that the ALJ erred by considering these assessments in isolation.  In other words, at no point is it apparent that the ALJ considered the significance of the consistency of the medical opinions with each other.

An ALJ may reach a conclusion that does not perfectly correspond with any one medical opinion.  Dr. Balmaceda's opinion as a treating physician, however, was entitled to particular consideration under the standard applicable here and, in any event, it was error to ignore the consistency of the opinions with each other. *See Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *7 (D. Vt. July 14, 2020)("Moreover, the ALJ should have considered that the opinions of Stephens and Dr. Lussier are consistent with each other.").

Notably, there is significant support in the record for the conclusion reached by these three physicians that Plaintiff had limitations on her ability to stand and walk inconsistent with the rigorous demands of light work.

A May 2014 MRI of the cervical spine reveled disc herniation at the C6-7 level and bulges at the C5-6 levels. (T at 358-59).  A July 2015 MRI of the lumbar spine showed disc bulges at L2-3 and L3-4, a disc bulge with a

decreased signal at L4-5, anterior spondylosis at L5-S1 with moderate disc space narrowing, endplate marrow narrow signal changes, and a broad-based disc bulge that encroaches the right and left neural foramina. (T at 356).

The record documents numerous findings of positive straight leg raising, muscle spasms, and reduced range of flexion and extension of the lumbar spine. (T at 981, 985, 987, 989, 991, 993, 995, 997, 999, 1001, 1006, 1008, 1010, 1012, 1014, 1016, 1018, 1020, 1027, 1078, 1081, 1083, 1085, 1087, 1091, 1142, 1149, 1151, 1153, 1155, 1157, 1159, 1163, 1165, 1167).

Plaintiff had been using a walker since September of 2019 (T at 955) and received the assistance of a home health aide for 35 hours per week beginning in December of 2020. (T at 931, 932).

It is "well-settled that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . . . While an [ALJ] is free to … choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)(quoting *McBrayer v. Secretary of Health and Human Servs*., 712 F.2d 795, 799 (2d Cir. 1983) (alterations in original).

Here, given the extensive evidence of limitation in Plaintiff's ability to stand and walk for prolonged periods, including the assessments of a treating physician, consultative examiner, and testifying medical expert, the Court concludes that the ALJ's consideration of the evidence cannot be sustained even under the deferential standard of review applicable here. *See Mackey v. Comm'r of Soc. Sec.*, 519 F. Supp. 3d 151, 153 (E.D.N.Y. 2021)("Such substitution of the ALJ's armchair views of medical evidence is clearly impermissible."); *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) ("T]he ALJ was not at liberty to substitute his own lay interpretation of that diagnostic test for the uncontradicted testimony of [the treating physician]"); *Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) (holding that "the ALJ cannot arbitrarily substitute h[er] own judgment for competent medical opinion") (modifications in original).

B.    *Remand*

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal

standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also*

*Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS

180514, at *28 (S.D.N.Y. Nov. 6, 2014).

For the reasons outlined above, the Court finds that a remand is

required for proper consideration of the evidence regarding Plaintiff's ability

to stand and walk for prolonged periods.

In addition, it is recommended that assignment to a different ALJ be

ordered on remand. "[A] fresh look by another ALJ would be beneficial,"

given that this particular ALJ has already undertaken two unsuccessful

attempts to conduct a proper analysis. *Collado v. Astrue*, No. 05-CV-3337

KMK/LMS, 2009 WL 2778664, at *3 (S.D.N.Y. Aug. 31, 2009)(citations

omitted); *see also McClaney v. Astrue*, No. 10-CV-5421 JG JO, 2012 WL

3777413, at *20 (E.D.N.Y. Aug. 10, 2012)(collecting cases).

Lastly, this Court is mindful that Plaintiff's initial applications for

benefits have been pending for more than seven (7) years and this matter

has already been remanded once.  As such, this Court exercises its

discretion and directs that proceedings before the ALJ be completed within

120 days of the date hereof.  If the decision is a denial of benefits, then a

final decision shall be rendered within 60 days of any appeal by Plaintiff.

*See Martinez v. Saul*, No. 19-CV-6515 (BCM), 2021 WL 2588783, at \*11 (S.D.N.Y. June 23, 2021).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 20) is GRANTED; the Commissioner's Motion for Judgment on the Pleadings (Docket No. 29) is DENIED; and this case is REMANDED for further administrative proceedings consistent with this Decision and Order. The Clerk is directed to enter final judgment and then close the file.

Dated: June 27, 2023                    *s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge